IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

VIRGIL WILLE,

          Plaintiff,

     v.                            Case No. 11-4121-RDR

GRANT DAVIS,

          Defendant.

**MEMORANDUM AND ORDER**

This is an action alleging legal malpractice. Plaintiff alleges that because of defendant's negligence, fraud and breach of fiduciary duty during the settlement of a case, plaintiff's legal interests in claims brought by his now deceased wife lost settlement value. The claims which were settled asserted that two major drug companies failed to take measures to prevent chemotherapy drugs from being diluted by a pharmacist. Hundreds of cases were brought by other plaintiffs with similar claims and were settled according to a "Global Settlement Agreement."

Currently, there are six other cases assigned to this court with similar claims against defendant. These cases have not always been assigned to the undersigned judge. This case is now before the court upon defendant's summary judgment motion. The predominant argument in defendant's motion is that plaintiff's claims are barred by the statute of limitations. For the

reasons outlined below, the court finds that plaintiff's case is untimely filed.

I.  SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir.) cert. denied, 537 U.S. 816 (2002).  Such a showing may be made with citation "to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."  FED.R.CIV.P. 56(c)(1)(A).  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  The moving party may demonstrate an absence of a genuine issue of material fact by pointing out a lack of evidence for the other party on an essential element of that party's claim. Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000)(quoting Adler, 144 F.3d at 671).

II. UNCONTROVERTED FACTS

The following facts are considered uncontroverted for the purposes of defendant's summary judgment motion.

A.   The suit against Eli Lilly and Bristol-Myers and its settlement

On April 23, 2002, defendant's law firm filed an action in state court in Jackson County, Missouri on behalf of Evelyn Wille against the pharmacist Robert Courtney, Eli Lilly and Company and Bristol-Myers Squibb Company. The lawsuit alleged that Ms. Wille was harmed because she received diluted chemotherapy medication. Plaintiff is the surviving widower of Evelyn Wille. Ms. Wille died from cancer on February 17, 2007.

On November 5, 2002, Ms. Wille signed a disclosure of global settlement with Eli Lilly and Bristol-Myers. The disclosure document stated that there were over 300 separate lawsuits and that defendant's law firm represented the majority of the plaintiffs in those lawsuits. It further stated that Eli Lilly and Bristol-Myers were making a joint settlement offer to resolve all of the cases and set aside money for future cases filed against the companies. The disclosure makes reference to the settlement agreement. By signing the disclosure, Ms. Wille represented that she understood she had the right to "opt out" of the settlement agreement and to pursue her claims separately. She also represented that she understood that her right to

receive funds would be determined by a Special Master according to the terms of the settlement agreement. Under those terms, a settlement fund of not less than a specified amount or more than a specified amount would be established, with the exact amount to be determined through binding arbitration. Tilzer v. Davis, Bethune & Jones, LLC, 204 P.3d 617, 620 (Kan. 2009). She further acknowledged that Eli Lilly and Bristol-Myers each offered Georgia Hayes (one of the plaintiffs bringing a similar claim) a separate settlement of approximately $1.45 million to resolve her case and Georgia Hayes would not be participating in the distribution of funds by the Special Master. Trial had started in Georgia Hayes' case when the global settlement was reached.

Also on November 5, 2002, Ms. Wille signed a release and settlement agreement which stated that she understood the process by which settlement amounts would be determined by the Special Master and acknowledged that she had agreed to accept the settlement amount determined by the Special Master as a full and complete compromise of her claims.

On May 20, 2003, the Special Master Committee awarded Ms. Wille $176,415.92. On June 24, 2003, Ms. Wille signed a settlement sheet acknowledging receipt of the settlement amount minus attorney's fees.

    B.   The Tilzer case

Rita Tilzer was another client of defendant with a case which was settled as part of the global settlement with Eli Lilly and Bristol-Myers. She died prior to the settlement and her husband and children were substituted as plaintiffs. The Tilzer plaintiffs opted into the settlement agreement, but objected to the award recommended by the Special Master. A motion to enforce the settlement and a motion to enforce defendant's attorney's lien were filed in Missouri state court in late 2003. Also in late 2003, the Tilzer plaintiffs filed a legal malpractice counterclaim (later withdrawn) against defendant in Missouri state court. They also filed a separate malpractice lawsuit against defendant in Kansas state court in April 2004. The malpractice action alleged that the global settlement was an aggregate settlement and that defendant had failed to comply with the disclosure requirements of the Missouri Rules of Professional Conduct, specifically Rule 4-1.8(g).[1]

The Tilzer plaintiffs lost at the district court level in Kansas, but prevailed before the Kansas Supreme Court in a decision dated April 3, 2009. The court decided that "the terms

---

[1] This rule provides: "A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client gives informed consent, in writing signed by the client. The lawyer's disclosure shall include the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement."

of the Global Settlement contained all the important features of
an aggregate settlement" and that "[r]ather than establishing a
non-aggregate settlement, the unavailability of the information
required to be disclosed by Rule 4-1.8(g) simply corroborated
that it was an aggregate settlement and rendered it impossible
for [defendant Davis] to obtain an informed consent under the
rule." Tilzer, 204 P.3d at 629.  The mandate was issued on June
5, 2009.  Defendant Davis petitioned the United States Supreme
Court for review, which was denied on November 2, 2009.  Davis
v. Tilzer, 558 U.S. 992 (2009).

The pleadings and proceedings in the Tilzer case were under
seal and restrictions were ordered to prevent the Tilzers from
contacting other clients of defendant.  After the Kansas Supreme
Court's decision, there was continued opposition by defendant to
legal efforts by the Tilzers' attorneys to obtain permission to
contact other clients of defendant in the diluted drug cases.
On December 2, 2009, the Tilzers were given permission to
contact defendant's clients.  Counsel for the Tilzers (who are
now counsel for plaintiff and filed this case for plaintiff)
contacted a limited number of defendants' clients, but were not
aware of the Wille family until mid-July 2010.  Counsel's
efforts to contact the Wille family were not successful until
August 2011.  This is when Virgil Wille first became aware of
the Tilzer case.

III.  THE COMPLAINT IN THIS CASE

This case was filed on September 29, 2011. Plaintiff alleges: that he and his deceased wife were represented by defendant along with approximately 215 other persons with claims against Eli Lilly and Bristol-Myers; that defendant made aggregate settlement demands without advising his clients, including plaintiff and his deceased wife; that Georgia Hayes' case, as the first case filed, was selected to go to trial first among all of the cases; that settlement amounts were determined according to tiers related to the timing of the claim and that Georgia Hayes (the sole member in the first tier) received much more in settlement than those with claims in the second and third tiers; that defendant acted to conceal from plaintiff and other claimants, the specific amounts awarded to all families, how much money was distributed in total to all families, and the criteria and methodology used to determining the awards; that defendant failed to disclose serious conflicts of interest between defendant and each of his clients; and that defendant had a strong interest in persuading each of his clients to participate in the global settlement agreement so that he could obtain his aggregate fee.

IV. THE BOOTH AND SCHMITZ DECISIONS

Both sides make reference to the decisions upon motions to dismiss in two companion cases:  Booth v. Davis, 2010 WL 4160116

7

(D.Kan. 8/31/2010) and <u>Schmitz v. Davis</u>, 2010 WL 3861843 (D.Kan. 9/23/2010).   These cases were assigned to a different judge at the time the decisions were written and filed.   The decisions rejected dismissal upon statute of limitations grounds.   The opinions are relevant here, of course, because defendant is making a statute of limitations argument.   The statute of limitations argument has not been made previously in this case.

When assessing a statute of limitations argument upon a motion to dismiss, the question before the court is whether "the dates given in the complaint make clear that the right sued upon has been extinguished." <u>Aldrich v. McCulloch Prop., Inc.</u>, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980); see also, <u>Dummar v. Lummis</u>, 543 F.3d 614, 619 (10th Cir. 2008)(if pivotal question for application of statute of limitations is apparent on the face of the complaint, the issue may be resolved on a motion to dismiss).   As noted in <u>Booth</u>, the court may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference.   <u>Booth</u>, at *1 (citing <u>Smith v. United States</u>, 561 F.3d 1090, 1098 (10th Cir. 2009)).

In <u>Booth</u> and <u>Schmitz</u>, the court held that the dates provided in the complaint, exhibits, and incorporated documents did not make clear that the plaintiffs' injuries were reasonably ascertainable until April 3, 2009.   In essence, the court found

that plaintiffs had not pleaded themselves out of court.  In the decisions, however, the court did make a categorical statement that the lawsuits, having been filed within two years of April 3, 2009, were timely.  <u>Booth</u>, 2010 WL 4160116 at *7; <u>Schmitz</u>, 2010 WL 3861843 at *6.  This was based upon the conclusion that "until April 3, 2009 [the date of the Kansas Supreme Court's <u>Tilzer</u> decision], plaintiffs' injury if any, arising from defendant's handling of the aggregate settlement was not reasonably apparent to them."  <u>Id.</u>

V.  THE PARTIES' ARGUMENTS

    Defendant contends that the statute of limitations began running for plaintiff prior to April 3, 2009.  Defendant also contends that, even assuming that plaintiff's injury was not reasonably apparent until April 3, 2009, plaintiff's action is barred by the two-year statute of limitations.[2]

    Plaintiff contends that the <u>Booth</u> and <u>Schmitz</u> decisions do not control the outcome here because the court merely held that those cases were timely filed because they were filed within two years of April 3, 2009.  In <u>Booth</u> and <u>Schmitz</u> the court was not faced with a situation in which the plaintiff had not learned of the <u>Tilzer</u> case until 2011.  Plaintiff argues that plaintiff's claims accrued in 2011 when Virgil Wille was first contacted by

---

[2]  It is undisputed by the parties that the Kansas two-year statute of limitations contained in K.S.A. 60-513(a)(4) applies to this case, even though Missouri law governs the substance of plaintiff's claims.

the Tilzers' attorney, William Skepnek.  Plaintiff also argues that defendant should be estopped from asserting a statute of limitations defense because of defendant's efforts after the Tilzer decision to withhold the identity of clients, such as Virgil Wille, and to prevent contact between the Tilzer attorneys and those clients.

VI.  PLAINTIFF'S CAUSE OF ACTION ACCRUED MORE THAN TWO YEARS BEFORE THIS LAWSUIT WAS FILED.

There is no dispute that plaintiff's cause of action in this case is a tort action.  Under Kansas law, a tort action generally accrues when:  "the act giving rise to the cause of action first causes substantial injury, or, if the fact of the injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of the injury becomes reasonably ascertainable to the injured party. . ."  K.S.A. 60-513(b).

In Pancake House, Inc. v. Redmond By and Through Redmond, 716 P.2d 575, 579 (Kan. 1986), the court reviewed accrual principles in the context of a legal malpractice action:

> In general, a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises. The true test to determine when an action accrues is that point in time at which the plaintiff could first have filed and prosecuted his action to a successful conclusion. Johnston v. Farmers Alliance Mutual Ins. Co., 218 Kan. 543, 548, 545 P.2d 312 (1976); Yeager v. National Cooperative Refinery Ass'n, 205 Kan. 504, 470 P.2d 797 (1970).

Depending upon the facts and circumstances of each case, there are at least four theories which can apply to attorney malpractice in Kansas as to when the accrual of a cause of action occurs and the statute of limitations begins to run. These include:

(1) The occurrence rule—the statute begins to run at the occurrence of the lawyer's negligent act or omission.

(2) The damage rule—the client does not accrue a cause of action for malpractice until he suffers appreciable harm or actual damage as a consequence of his lawyer's conduct.

(3) The discovery rule—the statute does not begin to run until the client discovers, or reasonably should have discovered, the material facts essential to his cause of action against the attorney.

(4) The continuous representation rule – the client's cause of action does not accrue until the attorney-client relationship is terminated.

Plaintiff is relying upon the discovery rule and estoppel principles to argue that his case is timely filed. The court rejects plaintiff's discovery rule arguments for the following reasons. First, plaintiff does not identify a material <u>fact</u> essential to his cause of action of which plaintiff was unaware less than two years before he filed this action. The "fact" plaintiff claims he did not know was the Kansas Supreme Court's holding in <u>Tilzer</u>. That ruling, however, was not a material fact essential to plaintiff's cause of action in this matter. Rather, it was a legal holding in a case with similar facts. Second, persons are presumed to know the law. So, if a legal

holding could be a material fact for the purposes of determining when a cause of action accrued, then plaintiff should be presumed to have known it when the legal holding was issued. See Knight v. Myers, 748 P.2d 896, 901 (Kan.App. 1988)(implying constructive knowledge of statute of limitations and therefore of the fact of injury when the statute of limitations passed on a claim); see also, FDIC v. Alexander, 78 F.3d 1103, 1107-08 (6th Cir. 1996)(applying Ohio law, constructive knowledge of facts, not actual knowledge of their legal significance, starts the limitations period running).

It is undisputed that the Willes were aware of the terms of their settlement with Eli Lilly and Bristol-Myers. They were also aware in 2003 that the money Evelyn Wille received in settlement was vastly less than the amount received by Georgia Hayes. They were aware that it was a global settlement and that a large number of plaintiffs would divide a fixed amount of money. Further, they knew what defendant told them regarding the settlement. The court believes there is no material issue of fact to dispute that plaintiff was aware of the facts essential to his cause of action more than two years prior to filing this lawsuit.

VII. THERE IS AN ABSENCE OF EVIDENCE TO SUPPORT PLAINTIFF'S CLAIM OF EQUITABLE ESTOPPEL.

The court is also convinced that there is no material fact issue to support plaintiff's claim of estoppel.  In Kansas, equitable estoppel exists when a party by its acts, representations, admissions, or silence when it had a duty to speak, induced another party to believe certain facts existed upon which that party detrimentally relied and acted.  Rockers v. Kansas Turnpike Authority, 991 P.2d 889, 894 (Kan. 1999)(quoting United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc., 561 P.2d 792 (1977)); Turon State Bank v. Bozarth, 684 P.2d 419, 422 (Kan. 1984)(also quoting Wild West Plymouth).  Estoppel by silence requires an intent to mislead "or at least a willingness that others should be deceived. . . ."  Turon State Bank, 684 P.2d at 423 (interior quotation omitted).  Plaintiff has the burden of proving the facts in support of equitable estoppel.  See Rockers, 991 P.2d at 894.

Plaintiff does not allege that defendant made a representation, action or admission upon which plaintiff relied. Nor does plaintiff allege that he relied upon defendant's silence to his detriment.  Instead, plaintiff asserts that defendant should be estopped from alleging a statute of limitations defense because he opposed and thereby delayed the

disclosure of plaintiff's name (among other names) to a third party - the Tilzers' and their counsel - and because he opposed and delayed contact by the Tilzers' counsel with his former clients.  Of course, the Tilzers' counsel were not representing plaintiff when these actions occurred.

Plaintiff cites one case in support of his estoppel claim, Freebird, Inc. v. Merit Energy Co., 883 F.Supp.2d 1026 (D.Kan. 2012).  In Freebird, the plaintiff was a royalty owner who alleged that an oil lease operator failed to pay or underpaid gas royalties.  The plaintiff claimed the statute of limitations should be tolled on the basis of equitable estoppel because the oil lease operator engaged in fraudulent concealment by failing to include relevant information on the check stubs for royalty payments.  The court held that tolling did not apply because the defendant's "mere silence" without "actual artifice" was not sufficient to establish fraudulent concealment, and there was sufficient information given to plaintiff that with due diligence it could have discovered the facts necessary to bring its cause of action.  Thus, the result in Freebird does not support plaintiff's tolling claim.

Nor do we find support for equitable estoppel in Freebird's legal analysis for the following reasons.  First, Freebird's analysis of the doctrine of "fraudulent concealment" does not address whether opposition to disclosing information to a third

party (who will use the information to contact the plaintiff) should be considered an act of concealment toward the plaintiff. Second, Freebird involved the alleged nondisclosure of material facts giving rise to a cause of action, i.e., financial information relating to the calculation of gas royalties. In the case at bar, the nondisclosure of Tilzer ruling is not the concealment of a material fact giving rise to a cause of action. Instead, it is the alleged secreting of a published legal ruling in favor of a cause of action which was filed in 2004.[3] This distinction is important for, as the court stated in Freebird, when considering a claim of fraudulent concealment, the object of concealment is the facts underlying the cause of action. Id. at 1036 ("[t]he question is whether there was 'a design to prevent the discovery of the facts which gave rise to the action, and whether the act operated as a means of concealment'")(quoting Friends Univ. v. W.R. Grace & Co., 608 P.2d 936, 941 (Kan. 1980)). Finally, as in Freebird, plaintiff here has not shown that due diligence would have failed to lead him to discover his claims, even if the Tilzer decision is considered to contain "material facts" to his cause of action. In Freebird, the court remarked that a "party seeking to toll the statute of limitations . . . [must] explain why due diligence did not lead or could not have led to the discovery of

---

[3] The nondisclosure of plaintiff's name to the Tilzers' attorney is also not the concealment of a fact material to plaintiff's cause of action.

the facts and cause of action." The court found that with due diligence the royalty owner in Freebird could have obtained relevant information by asking for payment and deduction information pursuant to state law. Id. at 1037. In the case at bar, plaintiff has failed to allege or show facts demonstrating that with due diligence plaintiff could not have learned of the Tilzer case.

In sum, plaintiff does not allege that defendant concealed material facts underlying his cause of action from plaintiff. Plaintiff has not alleged facts showing that defendant's statements or silence were motivated by an intent or willingness to deceive plaintiff. There is also no showing of reliance by plaintiff upon defendant's statements, or misrepresentations by defendant, or silence from defendant when there was a duty to speak. The court concludes that critical elements of equitable estoppel cannot be proven by plaintiff.

VIII. CONCLUSION

In conclusion, there is no triable issue of material fact barring the finding that plaintiff's claims are untimely filed. More than two years before plaintiff filed this lawsuit, plaintiff was aware, either actually or constructively, of the essential facts which would make his injury by defendant's alleged misconduct reasonably ascertainable. And, plaintiff has not presented a material fact issue which would support a trial

on the question of equitable estoppel.   For these reasons, defendant's motion to summary judgment is granted.

     **IT IS SO ORDERED**

     **DATED THIS 17th DAY OF JUNE, 2015.**


                                  **s/ Richard D. Rogers**
                                    **RICHARD D. ROGERS**
                                    **UNITED STATES DISTRICT JUDGE**